## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DAWUD ALI, | : | Civ. Action No. 09-4956 (NLH) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| SALVATORE J. RANDO, JR., | : | |
| et al, | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

DAWUD ALI
327471B
168 FRONTAGE ROAD
NEWARK, NJ 07114
        *Pro Se Plaintiff*

MICHAEL E. RILEY
LAW OFFICES OF RILEY & RILEY
THE WASHINGTON HOUSE
100 HIGH STREET, SUITE 302
MOUNT HOLLY, NJ 08060

        *Attorney for Defendants*

**HILLMAN**, District Judge

        Plaintiff Dawud Ali brings a claim pursuant to 42 U.S.C. §
1983 for excessive force during his arrest in violation of his
Fourth Amendment rights.[1]  Before the Court is defendants' motion
for summary judgment.  For the reasons expressed below,

---

        [1] Although Ali states defendants violated his Eight
Amendment rights, when a plaintiff claims that police officers
used excessive force in the course of an arrest, the court should
analyze the claim under the Fourth Amendment, which protects
citizens from unreasonable seizures.  See Graham v. Connor, 490
U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

defendants' motion will be granted.

I.   **BACKGROUND**

Plaintiff Dawud Ali submitted his complaint to the Clerk of the Court on September 23, 2009.  The matter was administratively terminated on October 8, 2009 because Plaintiff's in forma pauperis application was deficient.  After the deficiency was cured and after pre-filing screening under 28 U.S.C. §§ 1915 and 1915A, the Court directed the Clerk to file the complaint on January 28, 2010.  The complaint, filed pursuant to 42 U.S.C. § 1983, alleged an unprovoked attack by the defendant police officers and their K-9 partner.  More specifically, Plaintiff alleged that on February 24, 2009, while he was waiting for an elevator at the High Gate Apartment Building in Atlantic City, New Jersey, K-9 Officer Salvatore J. Rando exited an arriving elevator and "immediately confronted plaintiff with his K-9 dog 'Sonto' and ordered his canine partner to attack plaintiff."  Ali states he "...did not resist arrest at any point" and that "Defendant Rando canine partner attacked plaintiff and commenced biting plaintiff up and down his left leg and groin area."  Ali further alleged that as the canine partner was biting him, police officers James Herbert and Salvatore Rando began punching, kicking and hitting plaintiff with a heavy object.  Ali states he sustained permanent injuries from the canine bites.

Defendants proffer the following uncontested facts.  On

2

February 24, 2009, the officers were responding to a call of a
home invasion and stabbing at the residence of Richard Carozzoni
and Daniel Tavarez.  The officers saw Ali in the building
sweating and out of breath.  Officer Rando asked Ali to wait
until the police could assess the scene.  Officer Herbert took
Carozzoni, who had been stabbed, to the elevator where Ali was
standing and he positively identified Ali.  Officer Herbert told
Ali to place his hands on his head and that he was under arrest.
Defendants state that Ali refused to comply and placed his arms
in his jacket.  Officer Herbert then attempted to subdue Ali to
handcuff him but Ali resisted arrest.  Officer Rando repeatedly
warned Ali to stop resisting or the K-9 would be released.
Officer Rando was attempting to aid Officer Herbert who was on
the ground underneath Ali, and that the K-9 subdued Ali until
handcuff restraints were in place.  After the handcuffs were in
place, defendants state that Officer Rando directed the K-9
partner to release Ali.  Ali was taken to the hospital from the
scene for treatment of his dog bite wound.

On March 16, 2010, less than two months after this Court
accepted his complaint for filing based on an allegation of an
unprovoked and brutal attack by law enforcement officers and
their canine partner a very different set of facts emerged.  On
that date, Ali plead guilty to first-degree robbery and resisting
arrest as part of a plea deal offered by the prosecution.  Ali

testified during his plea hearing that while in the course of committing a theft, or attempted theft, he used force upon Carazzoni while armed with or threatening the immediate use of a weapon known to be capable of deadly harm.  Ali also admitted that the police officers announced that he was under arrest and that he did not cooperate.  Ali stated "I refused to be handcuffed" and that he "pushed off on [the officer]."  Ali testified he pushed the officer hard enough to get him away so that he could not put handcuffs on him.

During the hearing, Ali was asked by the state court judge if he realized he was under oath, and Ali responded "yes."  The state court judge also confirmed that he had no hesitation whatsoever in pleading guilty, that he was not forced or threatened to do so, that no promises were made to get him to plead guilty other than those on the plea forms, and that he was satisfied with all the advice and service of his counsel.  On April 16, 2010, Ali was sentenced to 15 years' incarceration in state prison.

The facts Plaintiff admitted in his plea colloquy in state court stand in stark contrast to the facts alleged in his complaint.  Rather than being the seemingly innocent bystander who, while simply waiting for an elevator, was accosted and assaulted by police officers and their dog, Plaintiff was actually in the process of fleeing a violent robbery who, when

4

positively identified on the scene by the victim and ordered by law enforcement to submit, responded with acts of physical resistance to the officers.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.    Motion for Summary Judgment**

Defendants filed a motion for summary judgment seeking to dismiss Ali's complaint on grounds that: (1) Ali cannot sustain a cause of action under Section 1983 pursuant to the Heck doctrine, (2) the Atlantic City Police Department and Officers Rando and Herbert are entitled to qualified immunity; (3) the Atlantic City Police Department is entitled to summary judgment under the Heck doctrine; and (4) plaintiff failed to comply with discovery.  The discovery period in this matter ended on December 30, 2010, and defendants filed their summary judgment motion after the discovery period ended.  Ali did not respond to defendants'

discovery requests within the discovery period[2] and defendants did not depose Ali.

Ali filed a response to the summary judgment motion that was approximately four months late without requesting, or being granted, an extension.  Although untimely and not in compliance with Rule 56, this Court will allow Ali to file his response and affidavit in response to summary judgment.  See Crews v. Petrosky, 509 F.Supp 1199 (W.D.Pa 1981) (court considered a letter attached to plaintiff's amended complaint in ruling on a motion for summary judgment even though it did not comply with Rule 56(e)).

In his response, Ali states for the first time that he was assaulted "before and after he was handcuffed[] by way of a police K-9 dog."  He also states in his affidavit in support of his response that the defendants told the dog to bite him after he was handcuffed "for no reason," and that he did not resist after he was handcuffed.  Not only is this the first time that

_____

[2] Ali did not respond to discovery requests or seek discovery of his own until approximately May 2011, at the same time that he submitted his response to Defendant's Motion for Summary Judgment.  As noted, both were woefully out of time.  The Court's August 3, 2009 Scheduling Order directed the parties to complete discovery by December 30, 2010.  Defendant sought discovery within days, requests the Plaintiff ignored.  Rather, Plaintiff waited almost 5 months after the discovery deadline to begin any effort to participate in the discovery process and made no effort to seek extensions of time.  Similarly, and while we would excuse Plaintiff's failure to follow the technical aspects of Rule 56, he ignored the Defendants' timely filed summary judgment motion until months after an opposition was due.

Ali makes such allegations, the allegations contradict what he stated in his complaint.  In his complaint, Ali alleges that he was standing by an elevator when the K-9 dog immediately attacked him, presumably before he was handcuffed, or under arrest.  Even liberally construing Ali's allegations in his complaint as we must, see Haines v. Kerner, 404 U.S. 519, 520 (1972), reh'g denied, 405 U.S. 948 (1972)(pro se complaints must be construed liberally, and all reasonable latitude afforded pro se litigants), the factual assertions differ with Ali's response and create confusion over Ali's version of the events.  In addition, and significantly, the affidavit is inconsistent with Ali's testimony during his plea hearing.  At the hearing, Ali admitted to resisting arrest and pushing the police officer, but did not testify that the K-9 partner bit him after he was handcuffed, or that he did not resist arrest after he was handcuffed.

    **1.   Conflicting Affidavit**

Sworn testimony can be corrected by a subsequent affidavit in certain situations, such as when a witness was confused at an earlier deposition or for some other reason misspoke, and the subsequent correcting or clarifying affidavit may be sufficient to create a material dispute of fact.  Martin v. Merrell Dow Pharmaceuticals, Inc., 851 F.2d 703,705 (3d Cir. 1988) (affirming district court's decision to disregard plaintiff's affidavit submitted only after she faced almost certain defeat in

8

summary judgment and which flatly contradicted no less than eight of her prior sworn statements).  However, in cases where there is no reasonable explanation for the contradictory affidavit and its purpose is to merely attempt to defeat summary judgment, such an affidavit, sometimes called a "sham affidavit" is properly disregarded.  Id. (stating that "... the objectives of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit.") (citations omitted); Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("Factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [his] own prior deposition testimony.").

The Third Circuit has defined a "sham affidavit" as:

> ... a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment.  A sham affidavit cannot raise a genuine issue of fact because it is merely a variance from earlier deposition testimony, and therefore no reasonable jury could rely on it to find for the nonmovant.... [I]f it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate.

EBC, Inc. v. Clark Bldg. Systems, Inc., 618 F.3d 253, 269 (3d Cir. 2010) (citing Jiminez v. All American Rathskeller, Inc., 503

9

F.3d 247, 253 (3d Cir. 2007).  "[N]ot all contradictory affidavits are necessarily shams," however, "when there is independent evidence in the record to bolster an otherwise questionable affidavit...." Id.  Before a court may deem a contrary affidavit a sham, it shall apply a "flexible approach." Jiminez, 503 F.3d at 254.  This two-part inquiry focuses on whether an affiant can prove the bona fides of his affidavit through either 1) independent evidence on the record or 2) a satisfactory explanation for the discrepancy between the prior deposition testimony and the affidavit. Id.  An affiant's failure to either explain contradictory statements or offer independent bolstering evidence indicates the affidavit is a sham, thus removing that impediment to the court's entry of summary judgment.  Id.; O'Bryant v. City of Reading, 197 Fed.Appx. 134, 138 (3d Cir. 2006).

Applying a flexible approach to Ali's affidavit, he has not shown: 1) any independent evidence in the record that would support his claim that the K-9 bit him after he was handcuffed,[3] or 2) provided a satisfactory explanation for the discrepancy between the affidavit and his prior statements in his signed

---

[3] We also note that the objective medical evidence fails to corroborate Plaintiff's otherwise unsupported claim that he was punched, kicked or hit him with a heavy object.  The medical records recite that Plaintiff only complained of, and was only treated for, a dog bite to the left leg.  See Defendant's Letter Brief in Reply at 9 and Defendant's Exhibit 5.

complaint, or his prior testimony during the state criminal proceeding.  In his complaint, Ali states that he was waiting for an elevator when Officer Rando exited the arriving elevator and "immediately confronted plaintiff with his K-9 dog 'Sonto' and ordered his canine partner to attack plaintiff."  Ali alleges that Officer Rando's canine partner attacked him and bit him "up and down his left leg and groin area."  He also alleges that while the canine partner was biting him, the police officers began punching, kicking and hitting plaintiff with a heavy object.

Ali does not mention that he was handcuffed at any time during this altercation.  His statement that the K-9 partner attacked him "immediately" suggests that he was not handcuffed since the police officer would not have had time to handcuff him and "immediately" have his K-9 partner attack him upon exiting the elevator.  In addition, Ali's testimony given under oath during his plea hearing contradicts both the averments in his complaint and in his affidavit.  Ali admitted at his plea hearing to resisting arrest and admitted to pushing the police officer. At no time during the plea hearing did Ali state that the K-9 partner had bit him after he was handcuffed, or that the officers had punched, kicked or hit him with a heavy object.

Thus, there is no reasonable explanation for the contradicting statements in Ali's affidavit other than an attempt

by Ali to defeat summary judgment.  Under these circumstances,
the affidavit may be disregarded.  See Martin, 851 F.2d at 705.
Accordingly, the Court will not consider the statements in Ali's
affidavit.  However, the Court will consider Ali's testimony
given at his plea hearing since such testimony was given under
oath before a state court judge, and plaintiff was represented by
counsel.

Having decided that Ali's affidavit will be disregarded and
not relied upon, we turn to defendants' argument that Ali's claim
should be barred under the Heck doctrine.

**2.   Heck Doctrine**

Defendants argue that Ali's § 1983 claims should be
dismissed based on the Heck doctrine.  In Heck v. Humphrey, the
U.S. Supreme Court held that "when a state prisoner seeks damages
in a § 1983 suit, the district court must consider whether a
judgment in favor of the plaintiff would necessarily imply the
invalidity of his conviction or sentence; if it would, the
complaint must be dismissed unless the plaintiff can demonstrate
the conviction or sentence has already been invalidated." 512
U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

The Third Circuit has ruled that even though a plaintiff may
have been found guilty of resisting arrest, the guilty verdict
does not necessarily preclude an arrestee for recovering damages
on a § 1983 excessive force claim.  See Lora-Pena v. F.B.I., 529

12

F.3d 503, 506 (3d Cir. 2008)("It is conceivable that a law enforcement officer, acting within the scope of his official duties, may use force that is excessive in effectuating a lawful arrest."); Garrison v. Porch, 376 Fed.Appx. 274, 278 (3d Cir. 2010). Even if the plaintiff resisted arrest, it is possible to find that the police used excessive force to subdue him. See id. In Nelson v. Jashurek, the Third Circuit held that a finding that the police were justified in using "substantial force" to arrest the plaintiff did not mean that they were justified in using an "excessive amount of force" and thus did not mean that the actions by the police in effectuating the arrest were "objectively reasonable." 109 F.3d 142, 145 (3d Cir. 1997) (stating "... there undoubtedly could be 'substantial force' which is objectively reasonable and 'substantial force' which is excessive and unreasonable.").

Ali does not claim that any court has set aside his guilty plea for resisting arrest or that the validity of the plea has been thrown into doubt in any other proceeding. Ali is not alleging that the arrest was unlawful. Ali is alleging that defendants effectuated a lawful arrest in an unlawful manner by using excessive force in violation of the Fourth Amendment.

In New Jersey, a person is guilty of resisting arrest if he purposely prevents a law enforcement officer from effecting a

13

lawful arrest.  <u>See</u> N.J. Stat. Ann. 2C:29-2(a)(1).[4]  The issue
here is whether success on the merits of Ali's § 1983 claim would
necessarily undermine his resisting arrest conviction.  If there
were sufficient evidence for a jury to conclude that the force
used in effectuating the arrest was excessive or that unnecessary
force was used after the Plaintiff had been restrained, then <u>Heck</u>
would not bar such a claim. <u>See</u> <u>Nelson</u>, 109 F.3d at 145.  Since
Plaintiff appears to assert such claims, the <u>Heck</u> Doctrine alone
does not operate to bar his § 1983 claim.

Although the <u>Heck</u> doctrine, acting alone, does not bar Ali's
claim, defendants also argue that the uncontested facts establish
that police officers are entitled to qualified immunity.

### 3. Section 1983 Claim and Qualified Immunity

Section 1983 provides:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State .
> . . subjects, or causes to be subjected, any citizen of
> the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff
must establish that (1) the conduct deprived him of his rights,

_____

[4]N.J. Stat. Ann. 2C:29-2(a)(1) states: "Except as provided
in paragraph (3), a person is guilty of a disorderly persons
offense if he purposely prevents or attempts to prevent a law
enforcement officer from effecting an arrest."

privileges, or immunities secured by the Constitution or laws of
the United States and (2) the conduct challenged was committed by
a person acting under color of state law. Gomez v. Toledo, 446
U.S. 635, 640 (1980); Shuman ex rel. Shertzer v. Penn Manor
School Dist., 422 F.3d 141, 146 (3d Cir. 2005).

Government officials, however, may assert a defense of
qualified immunity. "'The doctrine of qualified immunity
protects government officials from liability for civil damages
insofar as their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person
would have known.'" Montanez v. Thompson, 603 F.3d 243, 249-50
(3d Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 129 S.
Ct. 808, 815 (2009)). "Qualified immunity balances two important
interests--the need to hold public officials accountable when
they exercise power irresponsibly and the need to shield
officials from harassment, distraction, and liability when they
perform their duties reasonably." Pearson, 129 S. Ct. at 815
(2009). This doctrine provides a government official immunity
from suit rather than a mere defense from liability. Id.

A Court must undertake a two-step inquiry to determine the
applicability of qualified immunity:

> First, a court must decide whether the facts that a
> plaintiff has alleged or shown make out a violation of
> a constitutional right. Second, if the plaintiff has
> satisfied this first step, the court must decide
> whether the right at issue was clearly established at
> the time of a defendant's alleged misconduct.

15

> Qualified immunity is applicable unless the official's
> conduct violated a clearly established constitutional
> right.[5]

Montanez, 603 F.3d at 250. "Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). "Only if the plaintiff carries this initial burden must the defendant then demonstrate that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions." Id.  In determining whether a defendant is entitled to qualified immunity, the court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S. Ct. at 818.  If the answer to either question is "no," the analysis may end there. See id. at 823 (finding that because the unlawfulness of the officers' conduct was not clearly established, the officers were entitled to qualified immunity, without having to answer the

---

[5]  Although the aforementioned sequence of the qualified immunity analysis is often appropriate, it is not rigid and inflexible; rather, a court may exercise its discretion in deciding which of the two prongs should be addressed first in light of a case's particular circumstances. Montanez, 603 F.3d at 250 (quoting Pearson, 129 S. Ct. at 818).

question of whether the officers violated the Plaintiff's constitutional rights).

Ali alleges that the defendant police officers used excessive force during his arrest in violation of his Fourth Amendment rights.  As explained below, the uncontested facts establish that the actions of the police officers were "objectively reasonable" and, therefore, did not violate Ali's Fourth Amendment rights.

### 3.  Excessive Force Claim Under Fourth Amendment

In determining whether excessive force was used, the Fourth Amendment's "objective reasonableness" test is applied.  Sharrar v. Felsing, 128 F.3d 810, 820-21 (3d Cir. 1997) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)).  The objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id. (relying on Graham, 490 U.S. at 396; Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir.1 995)). "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be

armed, and the number of persons with whom the police officers must contend at one time." Id.; Garrison, 376 Fed.Appx. at 277 ("In determining whether or not the force used in effecting an arrest was unreasonably excessive, a finder of fact is to consider the totality of the circumstances surrounding the arrest.").

In evaluating the proper test for objective reasonableness, the Supreme Court has provided that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, ... violates the Fourth Amendment." Graham, 490 U.S. at 396 (citation omitted). Rather, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id.

Since there is no deposition testimony or valid affidavit from Ali regarding the events leading up to and during the arrest, we look to Ali's testimony during his plea hearing. Ali testified at his plea hearing on March 16, 2010, as follows:

THE COURT: ... Did you, at some point in time, purposely prevent a law enforcement officer, Officer Jay Herbert of the Atlantic City Police Department, from effecting a lawful arrest by using or threatening to use physical force or violence against

18

him or another?

    THE DEFENDANT: Yes.

    ...

    THE COURT: Did they attempt to place you under arrest? Did they announce you were under arrest?

    THE DEFENDANT: Yes.

    THE COURT: Did you cooperate?

    THE DEFENDANT: No.

    THE COURT: What did you do?

    THE DEFENDANT: I refused to be handcuffed.

    THE COURT: And did you use force or violence upon the officer in order to get away from him?

    THE DEFENDANT: I pushed off on him.

    THE COURT: You pushed him?

    THE DEFENDANT: Yes.

    THE COURT: Did you push him hard enough to get him away from you so he couldn't cuff you?

    THE DEFENDANT: Yes.

    THE COURT: And you're a pretty big guy.  You would acknowledge you're somewhat strong, would you not?

    THE DEFENDANT: Yes.

    ...

    THE COURT: You're sure about this charge now? You did resist with using force, physical force on Officer Herbert's efforts to

get you under control and handcuff you?

THE DEFENDANT: Yes.

THE COURT: And that was by pushing away, pushing him away?

THE DEFENDANT: Yes.

THE COURT: An you would agree that the force was great enough that you did push him away?

THE DEFENDANT: Yes.

THE COURT: And Officer Herbert is a pretty big guy, too.

THE DEFENDANT: Yes.

THE COURT: So you had to use a significant amount of force to get him off of you.

THE DEFENDANT: Yes.

Based on the above exchange, there is no testimony or other evidence from which a jury could reasonably conclude that the police offers used "excessive force" in arresting Ali.  Even with the understanding that Ali's testimony was provided in the context of a plea hearing, and not in furtherance of his § 1983 claim, based on the questions posed and Ali's answers, it seems that the amount of force used by the police officers was commensurate with the amount of resistance put up by Ali.  Ali admitted that he did not cooperate, that he refused to be handcuffed, and that he pushed the police officer using a significant amount of force.

Furthermore, in assessing the facts and circumstances in

this case, Ali was suspected of committing a home invasion, and
of stabbing the victim with a knife.  The victim positively
identified Ali who was observed to be in the building, sweating,
and out of breath.  Ali did not cooperate with the police
officers and physically assaulted one of the officers during the
course of an arrest.  It would be objectively reasonable for the
officers to conclude, given the home invasion, stabbing, and
physical assault on the officer during an arrest, that Ali posed
an immediate threat to the safety of the officers and to others.
It would be objectively reasonable for the officers to have
immobilized Ali by releasing the K-9 partner at that time to
subdue Ali until he no longer posed a threat to the officers, or
to others.

    Although Ali alleges in his complaint that he did not resist
arrest "at any point," and that the police officer released the
K-9 partner to attack Ali immediately upon exiting the elevator,
these facts directly contradict what Ali testified to at his plea
hearing.  Ali filed his complaint on September 23, 2009.  He gave
testimony at his plea hearing on March 16, 2010.  Ali knew at his
plea hearing that he had filed this complaint and made no mention
of the alleged excessive force used by the defendant police
officers at the hearing.  At the hearing, Ali testified that the
officers announced that he was under arrest and that he refused
to cooperate and pushed the arresting officer.  We could not

accept Ali's allegations in his complaint without assuming that he perjured himself during his plea hearing and thereby undermine the plea agreement reached between Ali and the prosecutor and accepted by the state court judge.

Thus, under the two-step inquiry to determine the applicability of qualified immunity, Ali did not allege or show facts that can make out violation of a constitutional right. Having failed to carry his initial burden, the Court's inquiry ends at this point.  Consequently, plaintiff's complaint will be dismissed as to defendant police officers Salvatore Rando and James Herbert.

### 4.  Section 1983 Claim Against Police Department

In addition to the defendant police officers, Ali also brought a § 1983 claim against the Atlantic City Police Department.  Ali states in his complaint that the:

> Atlantic City Police Department failed to properly monitor, train or discipline rouge K-9 officers who improperly used canine partners to attack civilians wrongly.  The Atlantic City Police Department was aware of misconduct on the improper use of canine partners and failed to act.  Misuse of canine partners was so pervasive with the Atlantic City Police Department that the K-9 unit was disbanded by the city Mayor Honorable Lorenzo Langford.

Liability under § 1983 may be imposed on municipalities only where acts of the government employee are deemed to be the result of a policy or custom of the municipality for whom the employee works.  See Monell v. New York City Dept. of Soc. Servs., 436

U.S. 658, 691 (1978); Natale v. Camden County Correctional
Facility, 318 F.3d 575, 583-84 (3d Cir. 2003); see also City of
Canton v. Harris, 489 U.S. 378, 392 (1989) (holding that a county
cannot be subjected to § 1983 liability on a theory of *respondeat
superior*).  Municipal liability requires the plaintiff to
demonstrate that "'there is a direct causal link between [the]
municipal policy or custom and the alleged constitutional
deprivation.'"  Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d
Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 385
(1989)).

As explained above, Ali did not suffer any violation of his
Fourth Amendment rights.  Since there was no constitutional
violation, Ali's claim against the Atlantic City Police
Department must also be dismissed.  See Mills v. City of
Harrisburg, 350 Fed.Appx. 770, 773 (3d Cir. 2009) ("Absent an
underlying constitutional violation by an agent of the
municipality, however, the municipality itself may not be held
liable under § 1983.") (citing Grazier ex rel. White v. City of
Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003).

Therefore, defendants' motion for summary judgment will be
granted.  An appropriate Order will be entered.


Date: September 26, 2011              S/Noel L. Hillman

At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.


23